1  ADAMONT N. GEORGESON (57087)
   J. EDWARD KERLEY (175695)
2  DOHERTY GEORGESON KERLEY LLP
   999 Fifth Avenue, Suite 400
3  San Rafael, CA 94901
   (415) 453-2300
4  (415) 455-0270 Facsimile

5  Attorneys for Plaintiffs
   John Pettitt, Murphy Labrador
6  Corporation and Barbara Musser on
   behalf of the MAX GSD Trust of
7  1996 as Trustee

8

                UNITED STATES DISTRICT COURT
9               NORTHERN DISTRICT OF CALIFORNIA

10 JOHN PETTITT, MURPHY LABRADOR )  Case No. CV 07 5854
   CORPORATION, MAX GSD TRUST OF )
11 1996 BY BARBARA MUSSER,       )
   TRUSTEE,                      )  COMPLAINT AND:
12                               )  DEMAND FOR JURY TRIAL
           Plaintiffs,           )
13                               )
       v.                        )
14                               )
   JOHN CHIANG, individually and in his )
15 capacity as STATE CONTROLLER OF )
   THE STATE OF CALIFORNIA,      )
16                               )
           Defendant.            )
17                               )

18 _____

19
       Plaintiffs John Pettitt, Murphy Labrador Corporation, MAX GSD Trust of 1996 by
20
   Barbara Musser, Trustee, (collectively, the "Plaintiffs"), allege as follows:
21
                        **JURISDICTION AND VENUE**
22
23 1.   This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331,
24 and 1343. This action arises under the "Takings Clause" of the Fifth Amendment, the
25
   Due Process Clause of the Fourteenth Amendment, and the Contract Clause of Article 1,
26
27 Section 10 of the United States Constitution.
28

                                    1

Case No.                                                                    COMPLAINT

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1), because the Defendant's conduct occurred in the judicial district, and pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

3. Plaintiff John Pettitt, a citizen of Great Britain, an individual who lawfully resides in the U.S., is the Trustor of the MAX GSD TRUST OF 1996 that held 100,000 shares of stock, among other investments, in Cybersource Corporation (CYBS).

4. MURPHY LABRADOR CORPORATION ("MLC") is a holding company whose purpose was to hold investments, including the shares of CYBS, for the benefit of the MAX GSD TRUST. MLC was at all times relevant herein, wholly owned and held as an asset of the MAX GSD TRUST.

5. Plaintiff Barbara Musser is an individual and taxpayer who resides in Petaluma, California, and is the Trustee of the MAX GSD TRUST OF 1996 that held the CYBS stock.

6. Defendant John Chiang holds the elected position of Controller for the State of California. Defendant is named in his individual capacity and in his official capacity as Controller of the State of California.

## EQUITABLE ESTOPPEL AND THE TOLLING OF THE STATUTE OF LIMITATIONS

7. As a result of Defendant's acts, any statutes of limitation applicable to the claims asserted in this Complaint have been tolled or equitably estopped. Defendant was able to conceal from Plaintiffs the material facts involving their investment in CYBS. Defendant

2

Case No.                                                           COMPLAINT

seized Plaintiffs' CYBS stock without Due Process and converted the same for its own use. Based on Defendant's breach of his statutory obligation to notify Plaintiffs, Defendant is estopped from asserting a statute of limitations and has waived any such defense.

## II.

## NATURE OF THIS ACTION

8. This action is based on the unconstitutional conduct of Defendant under color of state law in seizing and liquidating approximately 1,500,000 in CYBS stock of Plaintiffs.

9. Defendant is the elected official charged under the California Constitution with overseeing the estimated $4.1 billion Unclaimed Property Fund pursuant to California's Unclaimed Property Law (hereinafter "UPL"), California Code of Civil Procedure Section 1300 *et seq.* Defendant has unlawfully seized and improperly liquidated Plaintiffs' CYBS stock, and is withholding the proper amounts that Plaintiffs are entitled to.

10. Plaintiffs are informed and believe that the Defendant, using color of law, interfered with the contractual and fiduciary relations that run from corporations and their agents to Plaintiffs, who are stockholders in CYBS. At times, Defendant directed and enabled his agents to force the surrender of stock investments, which was done under threat of fines and penalties issued by Defendant against the corporations and their agents. On information and belief, Defendant hired agents who are paid a consulting fee together with a "bounty" or percentage of all investments seized from corporations. In order to comply with the Defendant's demands, corporations and their agents surrender

Case No.                 COMPLAINT

duplicate stock certificates. Once the Controller receives the duplicate certificates, the stock investments are sold through private brokers and the proceeds are deposited in the general fund for the State of California.

11. Plaintiffs are informed and believe that starting in or about 1995, Defendant made the purposeful decision to disregard notice and due process obligations. Defendant determined that it was "impractical" and not cost effective to publish the individual names, addresses and stock information as required by statute, nor was it necessary to notify known stockholders with direct mail notice. Instead, Defendant determined that generic "block ads" were sufficient constitutional notice to the owners of the stock investments. Consequently, the investors whose stock was seized and sold by the Controller have no reason to suspect that their investments were taken.

12. Thus, as discussed in greater detail below, Defendant's actions in taking possession of Plaintiffs' stock investments without notice and due process or the knowledge and consent of the Plaintiffs violates the express provisions of the UPL, Article I. § 7 of the California Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution.

## FACTUAL ALLEGATIONS

### A. The Plaintiffs And Their Property.

13. John Pettitt is a citizen of England and worked on the development of software for CYBS during the period of roughly 1990 to 1995. In partial exchange for his contributions to CYBS, he received a serialized stock certificate. To this day, CYBS continues to correspond with John Pettitt regarding his stock and his pension fund and the

company knows precisely where he lives. However, sometime in or about 2004, Defendant caused CYBS to issue a duplicate stock certificate representing the stock owned by John Pettitt (which he placed into the MAX GSD TRUST OF 1996). Defendant then seized the shares of CYBS stock and sold them without notice and due process. As a result of the Defendant's actions, the MAX GSD TRUST OF 1998 established by John Pettitt holds the original stock certificate that is now worthless.

### B. The Decision To Sell Plaintiffs' Property.

14. Since the inception of the Unclaimed Property program until 1989 the internal policy of the Controller's Office was to retain a "position," or number of shares of stock that escheated to the Controller under the UPL, so that stockowners who filed claims with the Controller could be paid later in certificate form.

15. The UPL operates under the legal fiction that an individual has abandoned his investment if certain indicia are met, such as the failure to cash dividends, vote on a merger, or mail in a proxy over an extended period of time. Until the 1970s, the period of time to establish "abandonment" was 16 years. As California became increasingly cash-strapped, the UPL was identified as a revenue source, and the period of presumptive abandonment was shortened to three years, and is in some cases arbitrarily shortened even further to as little as six months. Thus, Defendant now presumes abandonment and seizes and sells stock investments after a period of as little as or less than three years if the arbitrary indicia of "abandonment" are met, in the estimation of Defendant.

16. Defendant takes these actions though the individual is known to the issuing corporation, and a list of the known owners of the stock is provided to the Defendant that

5

Case No.                                                                 COMPLAINT

includes, in nearly every case, the stockowners' addresses, and taxpayer or social security numbers. The Defendant sells the investments and deposits the proceeds in the general fund.

17. The original rationale for maintaining a stock position was so that claimants could be paid in certificate form as they stepped forward to claim their property. The original policy of payment in certificate form avoided exposure to the fluctuations of the stock market and the situation where the Defendant may have sold stocks for a loss, due to the vagaries of the stock market. The unwritten rule created by policy makers at the Defendant's Office prior to 1989 is that they did not feel that the Defendant should be exposed to liability based on the increased value of the given stock investment, hence the internal policy of compensating the owner in certificate form.

18. Beginning in 1989, this unwritten internal policy of compensating the claimant in certificate form was discarded by Defendant, and other internal policies discussed below, were permanently changed. Now the Defendant immediately sells any stock that comes into his possession, within a short time after its receipt.

**C. Disregard of Notice and Due Process Obligations.**

19. Under California's treatment of Unclaimed Property, California Code of Civil Procedure § 1300, *et seq.*, Defendant does not publish the names of the stockholders whose property is taken into custody and sold by Defendant. Instead, Section 1531 of the California Code of Civil Procedure requires the Controller to publish only a generic "block ad" in newspapers of general circulation within the State of California. Under the terms of the UPL, the Controller is required to provide direct mail notice to the

6

Case No.                                                                                     COMPLAINT

Stockholder if Defendant is notified of a social security number. Defendant is supposed to contact the Franchise Tax Board to obtain a current mailing address for the person associated with the social security number, but Defendant does not do so in every case where a social security number is known. The "block ad" notice violates the Due Process Clause of the United States Constitution, as it does not provide notice to apprise stockholders of the fact that their property has been seized and a meaningful opportunity to recover it. *Jones v. Flowers (2006) 547 U.S. 220. Taylor v. Westly,* 402 F.3d 924, 934 (9th Cir. 2005); *Mullane v. Central Hanover Bank (1950)* 339 U.S. 306.

20.   Moreover, certain classes of individuals, namely those whose social security number is not provided to the Defendant receive no notice whatsoever, even the inadequate notice required by Section 1531 of the UPL. For this reason, Section 1531 of the UPL is unconstitutional because it does not provide notice that is reasonable under the circumstances to alert stockholders that their property has been taken into the custody of Defendant to be sold for the use of the State.

### D. **Defendant Violated His Constitutional Duties.**

21.   The Defendant is obligated by his oath of office to uphold the California and United States Constitutions. Defendant's seizure and sale of the CYBS stock without notice and due process is a gross violation of law and repugnant to our form of government.

22.   Defendant has adopted policies that, when combined with the failure to provide notice, operate to inflict immediate and irreparable harm on stockholders. One such policy is to sell stock immediately upon taking the share certificates into custody. The effect of this policy is

to render it impossible for a stockholder to recover the stock itself, whether or not it was properly escheated and whether or not due process has been provided. Instead, Defendant forces the owners to accept an "account" in an amount determined by Defendant, purportedly representing the proceeds of the sale of the stock. This "account" is net of commissions and costs, which are determined by Defendant without any published guidelines or rationale. For example, the Defendant's records indicate that Plaintiff John Pettitt is entitled to roughly $663,000.00, when his investment should have reached a recent high in excess of $1,300,000 (100,000 x $13.00 per share = $1,300,000). In addition, the sale of the securities triggered an instant tax liability for Plaintiffs.

**E. The Controller Violated His Own State Laws, Such As The Unclaimed Property Act (UPL), Code of Civil Procedure §§ 1300, et seq. So That His Action Are *Ultra Vires* And Outside The Law.**

23. A fundamental purpose of the Unclaimed Property Law (UPL) that the Defendant swore to uphold is to protect <u>unknown</u> owners by locating them and restoring their property. Defendant breached the UPL by confiscating the property of Plaintiffs without notice, and selling their stock investments without their knowledge. Plaintiff alleges specific examples of the statutory breaches as follows:

24. Defendant is charged with the responsibility of upholding the UPL and protecting the public from its misapplication. At all times Plaintiffs allege that their identities and locations were known, or should have been known to Defendant upon exercise of reasonable due diligence. Defendant simply failed or refused to carry out his statutory obligations.

25. Likewise, through the Plaintiffs' records contain social security and taxpayer identification numbers, Defendant failed to request that the Franchise Tax Board provide current addresses in order to provide Plaintiffs with notice by direct mail as required by

statute.

26. Some Owners receive no notice at all, even if the Defendant upholds all of his notice obligations under the UPL. Specifically, the publication "notice" (which violates the *Mullane* standard and is insufficient to provide true notice to a reasonable person that his property has been seized) is only required in newspapers in California, which represents only a subset of Owners of "unclaimed" property in the Defendant's custody pursuant to UPL. Similarly, direct mail notice is required only when the Defendant receives a social security number from the Holder. Again, this is only a subset of the Owners of "unclaimed" property in the Defendant's custody pursuant to the UPL. Excluded from *any* form of notice, no matter how insufficient, are Owners who (a) live anywhere other than California, and (b) whose Holders do not provide a social security number to the Defendant. This would include *any* foreign citizen living in his native country whose stock is seized, since foreign citizens living outside of California whose Holder does not properly report the social security number to the Controller, whether the citizen has a social security number or not, and whether or not the Holder complies with its own obligations under the UPL, would receive no notice..

### FIRST CAUSE OF ACTION
### (Violation of 42 U.S.C. §1983)
### (Procedural Due Process)

27. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 26 as though fully set forth herein.

28. The Due Process Clause of the United States Constitution prohibits the State of California from depriving citizens of a protected property interest without due process of

Case No.                                                                                          COMPLAINT

law.

29. Plaintiffs had a constitutionally protected property interest in the CYBS stock. Defendant seized and liquidated Plaintiffs' CYBS stock. The seizure and sale of Plaintiffs' stock stripped Plaintiffs of their right to obtain the benefits of years of appreciation of the stock, triggered capital gains taxes, and resulted in other unnecessary fees and costs.

30. Defendant deprived Plaintiffs of their protected property interests without due process of law by:

(a) Failing to provide timely mail notice to Plaintiffs, whose identity and contact information Defendant either knew, or by the exercise of reasonable diligence, should have known; and

(b) Failing to provide timely publication notice to Plaintiffs that their property had escheated to the State of California pursuant to the UPL.

31. Defendant's failure to comply with the requirements of the Due Process Clause of the United States Constitution in the manners outlined above has resulted in substantial monetary losses to Plaintiffs.

32. Based upon the foregoing, Plaintiffs are entitled to and hereby seek restitution of their property and monetary damages, in a manner commensurate with the injuries they have suffered as a result of Defendant's violations of the Due Process Clause and the Fourteenth Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION
### (The Unclaimed Property Act)

33. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 32 as though fully set forth herein.

34. A primary and fundamental purpose of California's Unclaimed Property Act ("UPL") is to protect unknown owners by locating them and restoring their property to them.

35. The UPL in effect during the relevant time period either expressly or impliedly required Defendant to:

(a) Exercise reasonable diligence in determining whether, as a threshold matter, Plaintiffs' property was even subject to the UPL. Property only is subject to the UPL when its owners' identities and locations are "unknown." Thus, Defendant bore the initial responsibility of determining whether Plaintiffs identities and locations were in fact "unknown;"

(b) Publish timely notice to Plaintiffs of the escheatment of their property in the newspapers most likely to give each of these particular Plaintiffs notice that their property had escheated to the State of California;

(c) Include within the published notice described in section (b), the actual names of Plaintiffs;

(d) Mail timely notice to Plaintiffs of the escheatment of their property;

(e) Verify that the holders of Plaintiffs' property prior to escheatment ("Holders") had accurately reported Plaintiffs' stock investments (CCP § 1530, delivered all of Plaintiffs' property (CCP§ 1532), and properly transmitted notice to Plaintiffs prior to escheating Plaintiffs' stock (CCP §1513.5);

(f) Assign a value to Plaintiffs' stock upon liquidating it that was rationally related to the time and manner that Plaintiffs' stock was or should have been sold.

36. Based upon the foregoing, Plaintiffs are entitled to and hereby seek restitution of their Property or the value thereof from the Unclaimed Property Fund, or, alternatively, monetary Damages, in a manner commensurate with the injuries they have suffered as a result of Defendant's violations of the Unclaimed Property Law.

///

///

///

11

Case No.                                              COMPLAINT

### III. Prayer for Relief

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follows:

1. For Restitution
2. For Compensatory Damages
3. For Attorneys' fees and costs
4. For such other action that is just and proper

Dated: November 15, 2007, at San Rafael, California.

DOHERTY GEORGESON KERLEY LLP

By: _ADAMONT N. GEORGESON,_
Attorney for Plaintiffs

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

Case No.                                                                    COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DOHERTY GEORGESON KERLEY LLP

Dated: November 15, 2007

By: _____
ADAMONT N. GEORGESON
Attorney for Plaintiffs